COMMERCIAL FISHERMEN'S ASSOCIATION, et al., v. C. E. CHRISTENSEN, as Sheriff of Martin County, Florida, et al.,

10 So. (2nd) 322           Division A
September 25, 1942     Rehearing Denied October 30, 1942

Carlton & Ellis, for appellants.

J. Tom Watson, Attorney General, and J. R. Bullock, Assistant Attorney General, for appellee.

BUFORD, J.:

Appeal brings for review decree of the Circuit Court of Leon County, as follows:

"This cause having come before me on application by the plaintiff for a temporary restraining order, the plantiff's offering in evidence oral testimony taken before me, and depositions de bene esse taken on the 14th day of January, 1942, in Ft. Pierce, Florida, before Mary Fee, a notary public in and for the State of Florida at Large, and the cause having been argued by counsel for the respective parties hereto, and the Court being fully advised in the premises,

It Is Thereupon Ordered, Adjudged and Decreed That the application for a temporary restraining order be and the same is hereby denied, and the bill

of complaint filed in this cause be and the same is hereby dismissed."

The bill of complaint sought to enjoin the named defendants from interfering with the plaintiff in the use of a certain fish net in the catching of fish in the operation of commercial fishing in certain inside waters of Martin County, Florida, it being the contention of the complainants that the net so being used by the complainants did not come within the purview and inhibition of Chapter 18676, Special Acts of 1937, and it being contended by the defendants that the use of said net in such fishing was prohibited by the provisions of that Act.

The pertinent part of the Act involved provides:

"Section 1. It shall be unlawful for any person, persons, firm or corporation, to fish, or cause to be fished, any haul seine or drag net in any of the inside salt waters in Martin County, Florida."

It was not contended that the nets were being used in violation of Section 2 of the Act. The sole question presented is, whether or not the type of net being used came within the purview of Section 1 of the Act; In other words, was a haul seine or drag net.

In the case of Christensen, Sheriff, et al., v. Commercial Fishermen's Association, et al., 137 Fla. 248, 187 Sou. 699, we held:

"Under statute penalizing any person fishing or causing to be fished 'any haul seine or drag net' in inside salt waters of Martin County, quoted words have a definite meaning as used in connection with the fishing industry and do not contemplate or include cast nets, trammel nets, gill nets, pound nets and any other nets in common use in the fishing industry." (Sp. Acts 1937, c. 18676).

"Where title of an Act restrictively expresses its subject and the subject dealt with in the body of the Act is correspondingly restricted, title is sufficient."

"The title of an Act taken as a whole must be sufficient by fair intendments to cover the subject matter of the Act and must not be so worded as to mislead an ordinary mind as to real purpose and scope of enactment."

"Special local Act, title to which limited its application to the inside salt waters in Martin County and to any 'haul seine or drag net' was invalid for insufficiency of title, as respects Section 2 of the Act penalizing the fishing with nets of any kind except a common case net within a radius of two miles from the center of St. Lucie Inlet, in either the inside or the outside waters of Martin County." (Sp. Acts 1937, c. 18676, Sec. 2)

"Where special local Act in referendum election was referred to as an Act penalizing any person fishing or causing to be fished 'any haul seine or drag net' in inside salt waters of Martin County so that electors were not advised that they were required to vote for or against approval of Act which prohibited certain kinds of fishing two miles from center of St. Lucie Inlet in either the inside or outside waters of Martin County, infirmities of Act were not cured by the referendum election. (Sp. Acts 1937, c. 18676, Sec. 2).

"Invalidity of local special Act applicable to Martin County because of Section 2 which was not within the title of the Act did not affect the validity of Section 1, penalizing the fishing with any 'haul seine or drag net' in any of the salt waters of Martin County, since

such section was within the purview of the Act." (Sp. Acts 1937, c. 18676, Secs. 1, 2.)

So it is that the purview of the statute has been determined. There is no conflict in the testimony.

A model of the net used was presented to the chancellor below and was transmitted to this Court and exhibited here. The description of the net and the method of its use is contained in the record and is as follows:

"The same is constructed of a common fish trap, with funnel and leads, of netting of any practical sized thread and legal mesh, the trap being constructed with lead-line and cork-line as to open when immersed in water and collapse when removed therefrom.

"The leads are constructed of any practical sized thread and of legal mesh, with cork-line of sufficient size, and number of corks to float webbing, lead-line and lead, with a lead-line of no larger size than six-thread, and so constructed as to move the leads through the water by cork-line only, with the lead-line being free and unattached to the cork-line by any means whatsoever other than the webbing of the net.

### Manner of Use

"It is used by setting the trap at a proper location, and then running the leads out, and when the fish are banked against the leads and the trap, the leads are moved together and toward the trap by pulling the cork-line only, with the lead-line toggling or waving through the water to the rear of the cork-line, being free at all times from any fixed attachment to the cork-line other than the webbing of the net, and being

clear of the bottom at all times when being moved, and at no time touching the bottom while being moved through the water.

"By operating in such manner the fish are driven or forced into the trap."

From an examination of the net, we find the description to be accurate and the uncontradicted testimony is to the effect that the net is used in the manner described above.

From the record, we must now hold that the involved net is neither a haul seine or a drag net and does not come within the purview of the statute.

Therefore, the decree appealed from is reversed with directions that further proceedings be had not inconsistent with the views herein expressed.

So ordered.

BROWN, C. J., WHITFIELD, and ADAMS, JJ., concur.

ON PETITION FOR REHEARING

PER CURIAM:

On petition for rehearing it is contended that we failed to recognize the similarity of the force trap net, a model of which was exhibited to the Court, to a haul seine or drag net, the use of which type of net is denounced by the statute.

This contention is not warranted. We fully recognize the similarity and we also recognize that it may be that the force trap net could be converted into and used as a seine or drag net, but the record in this case shows that it was not intended to be used and was not in fact so used in its operation in fishing.

If the net here under consideration is converted into and used as a haul seine or drag net then it be-

comes an unlawful instrumentality and is subject to confiscation.

Our opinion filed here on September 25, 1942, dealt only with the record as made in this case and determines the sole question that as long as this type of net is used as the evidence showed it was intended to be used, that is, with the lead line floating high off bottom, its use is lawful. But, if, as stated above, it is converted to the use and purpose of a haul seine or drag net, there is nothing in our judgment intended to preclude prosecution for such use.

Rehearing denied.

BROWN, C. J., WHITFIELD, BUFORD and ADAMS, JJ., concur.